Good evening, Mr. Secretary, Department of Homeland Security. Mr. Secretary.  Good evening, in extending the rescission to removal and the protections to that stage, that otherwise the protection of the statute of limitations for rescission would really be meaningless. You could just take the next step and remove someone. Why doesn't that same logic apply when thinking about the other logical consequence of applying for citizenship? In the Bombadil decision, the court based its holding on the underlying purpose for the statute of limitations at 1256A. The court in Bombadil said that they were motivated by the fact that the statute is intended to safeguard a permanent resident's settled expectations that their immigration is permanent. And so bringing removal proceedings outside of the statutory period disrupted the settled expectations. So those concerns are not present here. But we're not taking away permanent resident status. We've conceded that he's a permanent resident. We can't bring removal proceedings. Is that the purpose of the statute of limitations? That is the question. It's for the benefit of permanent residents? I'm sorry? I heard you say settled expectations. And I wonder if the purpose of the statute of limitations is to at least let permanent residents know that what? They've got permanent residency? After five years. But the statute of limitations imposes, I gather, an obligation on the government. You have five years, is that right? We have five years to bring rescission proceedings. And, you know, after five years, that right is cut off. Under Garcia, under Bamadil, we can't bring the removal proceedings to challenge the improper adjustment. The intention is to encourage at least. What is the statute of limitations intended to achieve? Is it just to put pressure on the government to get this over with? I mean, I believe it has many purposes. I mean, Bamadil gave one of the purposes, which is we want to acknowledge the right of a permanent resident to stay here permanently. They have that expectation. By five years, we shouldn't be rescinding their adjustment. I'm sure that the statute of limitations has other purposes, to encourage or oppose, to make sure that the government is, you know, in a position where they can bring cases promptly and the evidence hasn't, you know, gone away. What about as in Kintana, to continue on the path towards citizenship? So, you know, Kintana does contain that language. And it's true that, you know, one of the reasons why people want permanent residency is so that they one day can be in a position to become a naturalized citizen of the United States. But it isn't a right. And, you know, it isn't certainly not an expectation that they can become a naturalized citizen. And so I believe that language from Kintana does not help Mr. Kaselnick in this matter. You know, naturalization. That's really the essence of his argument then, because if it's to settle the expectation of permanent residency, he has his permanent residency and he has an expectation of becoming a citizen. He has an expectation that his permanent residency cannot be taken away. But that doesn't mean he has an expectation to become a citizen. The naturalization requirements are very strict. As the Supreme Court has told us many times, the applicants for naturalization have, you know, no alien can be naturalized unless they meet the statutory requirements to the letter. This is, you know, talked about. And that is that they have been legally admitted into the United States? Including they have to meet the statutory requirement for lawful admission. That's one of the statutory requirements. And Federico says, you know, these statutory requirements have to be complied with strictly. So, you know, we have all this case law from other contexts, from contexts early from removal, where the courts have said and the board and Gallimore have said, you know, the lawful admission requirement requires a substantively compliant admission. No context demands a more strict interpretation of the term lawfully admitted than the naturalization context. But we're conferring permanent residence with the highest immigration benefit there is, one that's very difficult for us to take away. But haven't we in our circuit, I mean, with Bavendiel and Garcia, we've crossed the line to treating that statute of limitations as having a substantive effect that is, in a sense, expunging the unlawful initial admission because this person now has the status of a lawfully admitted permanent resident. We've extended that to say, therefore, they can't be removed. That is viewing it as a substantive change. Having done that, how do we distinguish that situation from citizenship? I mean, that's certainly how the appellant frames it. But there's now a positive sort of status arising from the court's interpretation of the statute of limitations. But, you know, I think understanding, you know, and looking to the common usage of the word accord, so the term lawfully admitted for permanent residence is defined at 8 U.S.C. 1101-820 to mean the status of having been lawfully accorded the privilege of residing permanently here in the United States. The common usage of accord means that you have been awarded something you've earned after a determination. The Oxford English Dictionary defines a verb accord to mean to give, bestow, award, especially by deliberate decision or with full consent. Merriam-Webster says accord means to grant or give, especially as appropriate, due or earned. These definitions suggest that Mr. Kweselnyk was not accorded status by virtue of the statute of limitations. The statute of limitations is a negative prohibition on the agency. They can't carry out enforcement actions in the form of rescission and removal. But it's not lawfully according him or even at all according him any sort of special status that he has earned. Summary judgment is appropriate here, although there are certain facts in dispute between the parties. None of them are material. What matters here is the fact that Mr. Kweselnyk had an outstanding deportation order at the time he filed his adjustment application. And as a matter of law, that means that the legacy INS lacked jurisdiction to adjudicate that application. These circumstances are alone sufficient to affirm the district court's summary judgment decision. Although he points out that he may have lacked knowledge of the deportation order, that's not something the government will concede, and also it's not a material fact. What matters is that he had the outstanding deportation order and it deprived the INS of jurisdiction. The lack of knowledge of his deportation order does not cure that legal defect. Kweselnyk, in his appellants, also argues in general that Gallimore does not apply to his case. At least he does in his briefing, and so I want to address that point. Gallimore clearly controls the outcome of this matter. It adopts the board's interpretation of the term lawfully admitted for permanent residence as requiring a substantively lawful admission. Gallimore makes clear that being lawfully admitted means your admission must have been consistent with all applicable law. He distinguishes Gallimore because it arises in the context of relief from removal, but as I pointed out, there's no more appropriate context to extend this interpretation of the term lawfully admitted because of the strict requirements for naturalization that the Supreme Court has recognized. Also, Gallimore and the board's decision in matter of Kolamatagi were cited in matter of Longstaff, which is a case arising from the naturalization context. Thus, it would be odd that Gallimore and matter of Kolamatagi's interpretation would not extend to the naturalization context when they, in part, were based on a naturalization case. And finally, there are just numerous cases. To my understanding, all the courts that consider the issue of whether AUSC 1429 requires a substantively lawful admission have all said yes and have adopted essentially the Gallimore interpretation and brought it into the naturalization context. We have two unpublished decisions from this court in Ginne Lynn and Kataroff v. Johnson, and we also have numerous district court decisions adopting Gallimore's interpretation of a lawful admission requirement. If this court deviated by not extending Gallimore or applying Gallimore to the naturalization context, it would be alone and it would also be inconsistent with the Fourth and the Fifth Circuits. The interpretation you're asking us to adopt, does it permit any exception where there, in fact, has been a mistake? And we can talk separately about the facts here, but just say there's a situation where it's undisputed that the alien never received notice of initial removal proceeding. Their attorney testifies they never passed on the information. Would you still say that that person, regardless of their having no culpability in the misrepresentation that was made, is forever barred from citizenship when they meet all other criteria? I mean, yes, because their adjustment or admission of permanent residence was not in compliance with all the substantive legal requirements that applied to them. So even if it was an administrative error, you know, the applicant was very honest, listed crimes that barred him, and the agency still somehow, you know, granted the adjustment or visa application, it would still be an unlawful admission. And these are actually the facts of certain public cases. It doesn't sound like a very fair result to me, but that's a matter that's addressed in the district court, isn't it? I mean, that might be your position. Well, I mean, you know, the equitable consideration simply can't be taken into account. Can be? Because it cannot be taken into account. Does the attorney general have discretion on this issue? No. Under the Supreme Court case law, no. I mean, we have to comply. The alien or applicant for naturalization has to strictly comply with the requirements for naturalization. But the failure to comply was not the immigrant's fault in this hypothetical? It was not. But, I mean, I believe it's decisions in the Eighth Circuit and elsewhere have adopted, you know, have said that the term lawfully admitted even extends to administer. If the agency error is 100 percent, which we're not saying it is here, you know, that would still mean the admission was not lawful, the alien would not be entitled to naturalization, because it's still a legal defect that can't entitle him to naturalization. Part of this comes from the fact that, you know, courts are not able to waive the statutory requirements for naturalization. In INS versus Peglignon, the Supreme Court said, I hope I said that case name correctly, but the Supreme Court said courts lack, even though they have equitable authority in naturalization, they can't use their equitable authority to grant citizenship where the statutory requirements have not been met. But we're not talking about granting citizenship. We're talking about a question that if only the Supreme Court had addressed, we would not be confronting as a matter of first impression in our circuit. And that is, under what circumstances do we take the lawful admission to be substantive versus procedural? So long as the admission did not comply with the immigration laws, it would not count as a lawful admission. And there isn't something the court or the agency can do. It would require further action. And that naturalization application would have to be denied based on the unlawful adjustment. Unless you're for his further questions, I just want to briefly address the fact that there is the issue of a material omission in Koselnik's application. He failed to list his original A number and the fact of his earlier deportation proceedings in his adjustment application. And these omissions cut off the line of inquiry into whether or not he was eligible to adjust before the legacy INS, as opposed to the Executive Office for Immigration Review. Okay. We have that information. Your time is up. I'm sorry. Thank you, Your Honor. Thank you very much, Ms. Eisenhower. Thank you. Mr. Brenner. Thank you, Your Honors. Well, to address your question, here the gentleman, Mr. Koselnik, was told that he has no right to apply for citizenship because the government takes the position. Well, the government just said you do. So why don't you just make the application? No, but we didn't make the application. The government didn't make the application. Or maybe it was rejected on the merits. No, no, it was rejected because they said that as a matter of law, someone who became a permanent resident on the basis of a statute of limitation, in other words their permanent residence became lawful because of the statute of limitations, those individuals are forever barred from becoming U.S. citizens. Okay, that's on the merits. That's on the merits. He applied and he was turned down. He was turned down because they said not because he We understand why he was turned down. Yes, indeed we do understand, but the point is, Your Honor, that that's contrary to what the statute says because the statute as it's been determined Your argument before is all you want is a right to make an application, and I couldn't see why you couldn't make the application. Now we learn that you did make the application, but it was rejected because it's not in compliance with the statute. Your Honor, we've never been other than clear on this very issue. In other words, what happened this year, he applied, and they did not deny him because he doesn't speak English, he doesn't know the history, because he has a bad moral character, for any reason because he was absent. They denied him because they say we have no jurisdiction to grant him a United States citizenship. Why isn't that dictated by Gallimore? How do you respond to the point that, I will mispronounce this, but Kolematangi, which our decision in Gallimore adopted, relied on the Longstaff decision. That was a naturalization decision. The Longstaff decision, we know, is not the law, because the Longstaff decision said you may not naturalize anyone who is a homosexual because they are mentally deficient, and the fact that they did not say so at the time of their original application for adjustment of status renders them forever disqualified. That's not the law. The particular issue is not. But the question is, if there was not actually lawful admission, if there wasn't jurisdiction to grant it, or the elements weren't satisfied, regardless, we'll put aside the specifics of that case, but any situation where there was not lawful admission to begin with, are we going to treat that as substantive or procedural? And we said, extending it into the 212C context, that we would treat it as substantive. I think that in this case, you're going to have to look at your decision, and that Kenyatta's case, where it says specifically that the purpose of the statute of limitations is to allow an individual to proceed to citizenship. That's what our script has said. That's the purpose of barring recession. That's the purpose of finding this statute of limitations, is to allow an individual to proceed to citizenship. And Congress never said anything which would prevent these individuals, a person like Mr. Kuzelny, from becoming a permanent resident. That's an administrative interpretation by the USCIS. It's without merit. All the cases that are cited in the procedural manual of the USCIS are all non-naturalization cases with the exception of Longstaff, and Longstaff isn't the law. So we're hearing first instance on this matter. And in my opinion, there's no question that if Congress had wanted to bar individuals like Mr. Kuzelny, they would have said so just as they did in only two cases, for deserters from the military and for those who showed the duty to go into the military because of their allegiance during a time of war. Judge Roth has a question for you. No, no, no. I'm totally sorry. Thank you, Mr. Blimeyer. I think we've gotten your arguments. Thank you. Thank you very much. Thank you both. We will take the case under advisement. Thank you. We need to take a short recess.